UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| JAMIE BECKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-00182-TWP-MPB |
| ) | |
| CITY OF EVANSVILLE, and ) | |
| ZACHARY ELFREICH, ) | |
| ) | |
| Defendants. ) | |

### ORDER ON DEFENDANTS' MOTION TO STRIKE

This matter is before the Court on Defendants City of Evansville's and Zachary Elfreich's (collectively, "Defendants") Motion to Strike the Expert Report and Anticipated Testimony of Plaintiff's Expert Dr. Christopher Chapman ("*Daubert* Motion") ([Filing No. 149](#)). Plaintiff Jamie Becker's ("Becker") claims for excessive force, battery, and negligence against the Defendants are set for trial by jury on November 29, 2016. The Defendants move to strike Becker's expert report and to exclude his expert from testifying at trial. For the following reasons, the Defendants' Motion to strike is **granted in part and denied in part**.

### I.   LEGAL STANDARD

Federal Rule of Evidence 702 governs testimony of expert witnesses. An expert may testify regarding the ultimate issue in a case. Fed. R. Evid. 704(a). Furthermore, an expert can base her opinion on inadmissible evidence. F.R.E. 703. However, "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible." *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003).

"Under the *Daubert* gatekeeping requirement, the district court has a duty to ensure that expert testimony offered under Federal Rule of Evidence 702 is both relevant and reliable."

*Jenkins v. Bartlett*, 487 F.3d 482, 488–89 (7th Cir. 2007) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).  "Whether proposed expert testimony is sufficiently reliable under Rule 702 is dependent upon the facts and circumstances of the particular case." *Id.* at 489.  The Court is given "latitude in determining not only how to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *Gayton v. McCoy*, 593 F.3d 610, 616 (7th Cir. 2010) (citing *Jenkins*, 487 F.3d at 489).

"In determining reliability, *Daubert* sets forth the following non-exhaustive list of guideposts: (1) whether the scientific theory can be or has been tested; (2) whether the theory has been subjected to peer review and publication; and (3) whether the theory has been generally accepted in the scientific community." *Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593–94 (1993)).  "The court should also consider the proposed expert's full range of experience and training in the subject area, as well as the methodology used to arrive at a particular conclusion." *Id.*

> Since the gatekeeping inquiry must be tied to the facts of the particular case, . . . a trial court may - but is not required to - consider "one or more of the more specific factors that *Daubert* mentioned when doing so will help determine the testimony's reliability."  But, the [Supreme] Court stressed, those factors, which were meant "to be helpful, not definitive," "neither necessarily nor exclusively apply to all experts or in every case."  Their applicability will depend on "'the nature of the issue, the expert's particular expertise, and the subject of his testimony.'"  The procedure employed will depend largely on the "particular circumstances of the particular case at issue."

*Richman v. Sheahan*, 415 F. Supp. 2d 929, 934 (N.D. Ill. 2006) (quoting *Kumho Tire*, 526 U.S. at 142, 150, 152).

Additionally, the district court must determine whether the proposed expert testimony will assist the trier of fact in determining a fact in issue or understanding the evidence. *Chapman v. Maytag Corp.*, 297 F.3d 682, 687 (7th Cir. 2002).  "Determinations on admissibility should not

supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton*, 593 F.3d at 616.

> Vigorous cross examination, presentation of contrary evidence and careful jury instructions . . . are the traditional and appropriate means of attacking shaky but admissible evidence. The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.

*Richman*, 415 F. Supp. 2d at 933 (citations and quotation marks omitted).

## II. BACKGROUND

Becker is a resident of Evansville, Indiana. Defendant Zachary Elfreich ("Officer Elfreich") is a police officer for the Evansville Police Department ("EPD"). Defendant City of Evansville is a political subdivision of the State of Indiana for which Officer Elfreich serves as a police officer. Becker has asserted that Officer Elfreich used excessive force in effectuating his arrest pursuant to an outstanding arrest warrant. He further alleges that the City of Evansville has demonstrated a custom and policy of deliberate indifference to the constitutional rights of its citizens. For purposes of ruling on the instant motion, the Court relies on the following facts.

At the time of the incident between Becker and Officer Elfreich, the City of Evansville had in effect a "Canine Unit Policy" codified as Evansville Police Department Standard Operating Procedure 359.03, wherein police dogs are trained to bite and hold when apprehending a suspect and further authorizes the dog's handler to unleash the dog resulting in the dog not being under the officer's complete control and within the line of sight of the officer. The City of Evansville also has a policy and practice of training their canine handlers to recall the dog before it bites a person if the officer observes the suspect surrendering while the dog is approaching the suspect.

During the early evening hours of March 11, 2011, Becker was at his mother's house, where he lives, located at 617 North Hess Avenue, Evansville, Indiana. Becker was in bed in his

bedroom upstairs with his girlfriend. He had recently returned home from work. Officer Elfreich and his canine partner, Axel, along with other Evansville Police Department officers arrived at the residence to execute an arrest warrant for Becker. An arrest warrant had been issued for an incident that occurred about a month earlier. Becker had threatened to kill his brother-in-law while he held a large kitchen knife to his neck.

When Officer Elfreich and the other police officers arrived at the Becker residence, they spoke with Becker's mother, Brinda Becker, and asked if Becker was home because they had a warrant for his arrest. Brinda Becker advised that he was upstairs asleep and said she would go get him. Brinda Becker went to the stairs leading to the second floor of the house and yelled upstairs to Becker that police officers were there to arrest him on a warrant. Becker responded that he was getting dressed and would come downstairs.

After Becker did not promptly appear, Officer Elfreich prepared to use Axel and yelled from the entryway of the house, "Police department K-9, come out now or I will release my dog and you will get bit." Approximately thirty seconds after issuing the warning and hearing no response, Officer Elfreich unleashed Axel and instructed him to find Becker, knowing that Axel would bite and hold the first person he encountered. Like all of the EPD's dogs, Axel was trained in the "bite-and-hold" technique. On command, Axel will search for a person, bite the first person he finds, and hold that person with his teeth until Officer Elfreich commands him to release.

Once unleashed, Axel ran from the front door to the back of the house and began up the stairs. At the same time, Becker and his girlfriend had begun coming down the stairs. Becker was holding his hands on top of his head so the police would know he was surrendering and was not a threat to their safety. After walking a few steps, Becker reached a landing where he felt Axel brush his left leg and then bite him. Becker shouted to Officer Elfreich to call off Axel because he was

coming downstairs. Whether Officer Elfreich lost sight of Axel is disputed, but Officer Elfreich ran to the steps, following Becker's voice. Officer Elfreich saw that Axel had bitten Becker's leg but did not command him to release Becker, rather, he commanded Becker to get on the floor.

After he was bitten, Becker remained standing with his hands on his head. Becker disputes hearing Officer Elfreich's commands to get on the floor. Officer Elfreich grabbed Becker by the front of his shirt collar and pulled him down the remaining stairs. Becker's eyeglasses fell off his face, and he landed hard on the floor on his chest and head. Axel, who had lost his grip when Officer Elfreich pulled Becker down the stairs, ran to Becker and started biting Becker's left calf and shook his head violently. Becker lay still on the ground with his hands behind his back, not resisting his arrest. Officer Elfreich placed his knee in Becker's back, handcuffed him, and only then ordered Axel to release his grip. Axel complied with the order to release his bite on Becker. Becker alleges that Axel bit him for about a minute. Someone called for an ambulance, and when advised that an ambulance would take approximately ten minutes, an EPD officer placed Becker into a police cruiser, and he was taken to the hospital where he underwent surgery for the injuries he suffered.

### III.     DISCUSSION

In their *Daubert* Motion, the Defendants move to strike Becker's expert report and to exclude his expert from testifying at trial. During discovery and summary judgment proceedings, Becker utilized the services of Christopher Chapman, Ph.D. ("Dr. Chapman") to provide expert testimony regarding police use of force and its reasonableness. Dr. Chapman provided an expert report and opined that Officer Elfreich's actions were objectively unreasonable when using force against Becker to effectuate his arrest and the City of Evansville displayed deliberate indifference to the constitutional rights of individuals by its policies, practices, and customs.

The Defendants ask the Court to strike Dr. Chapman's expert report and to prohibit him from testifying at trial. They assert that Dr. Chapman is not qualified to testify as an expert because he has no training or experience as a police canine handler; the opinions found in his report are not supported by and do not use specific standards, policies, or methods, making the opinions unreliable; and his testimony is irrelevant because it concerns impermissible legal conclusions and the state of mind of Officer Elfreich, which is not at issue. The Defendants explain that, although testimony from a police practices expert can be admissible in a Section 1983 use of force action, the Seventh Circuit prohibits an expert from testifying as to the ultimate issue of whether an officer had used excessive force, citing to *Thompson v. City of Chicago*, 472 F.3d 444, 457–58 (7th Cir. 2006).

Regarding the Defendants' request to strike Dr. Chapman's expert report, the Court notes that the report has not been offered into evidence, and in fact, the report is not included on Becker's trial exhibit list (see Filing No. 160). Therefore, the Court **DENIES** the Defendants' request to strike the expert report. This request is denied without prejudice so that if Becker offers the expert report into evidence during trial—which it appears he will not since it is not designated on his exhibit list—the Defendants can renew their request.

In responding to the Defendants' *Daubert* Motion, Becker points out that the Defendants challenged Dr. Chapman's qualification as an expert based on his experience only; they did not challenge his education and training. Becker explains that Dr. Chapman worked for twenty years as a police officer in various state and federal agencies. While Dr. Chapman was never trained or worked as a canine handler, he testified that during his time as a police officer, he supervised many canine handlers and worked with them on the scene while their canines were in use. While supervising other officers, Dr. Chapman would give permission to canine handlers to release the

6

dog. He also provided training to agencies on the use of police canines as part of use of force training. Becker explains that Dr. Chapman has published articles and taught courses on the use of force. Further, Dr. Chapman has been trained and educated on and has experience with the use of force in police operations, including the use of police dogs as an instrument of force. He received training on when police dogs should be used, for what they should be used, and how they fit into the use of force continuum.

Becker asserts that the issue in this case is not the training of Axel, Officer Elfreich's canine, but rather the reasonableness of Officer Elfreich's use of Axel in arresting Becker. Because the issue is the reasonableness of the force used by Officer Elfreich, Dr. Chapman's education, training, and experience sufficiently qualify him to offer an opinion on these issues, and his anticipated testimony is directly relevant to the issues to be tried by the jury. Becker also explains that Dr. Chapman's opinions are not impermissible legal conclusions, pointing to five other cases within the Seventh Circuit that allowed expert testimony on the issue of the reasonableness of a police officer's use of force. *See Jimenez v. City of Chicago*, 732 F.3d 710, 719–22 (7th Cir. 2013) (court allowed expert to testify regarding reasonable police practices and how the officer's conduct departed from that standard of reasonableness); *Abdullahi v. City of Madison*, 423 F.3d 763, 772 (7th Cir. 2005) (plaintiff's proffered expert testimony that officer's tactics violated standard police practices was permissible because it could be relevant to the reasonableness inquiry); *Calusinski v. Kruger*, 24 F.3d 931, 937 (7th Cir. 1994) (defendants introduced expert testimony explaining the proper procedures used by law enforcement officials to restrain arrestees who resist arrest and that the defendants' actions were well within proper guidelines for use of force by the police); *Kladis v. Brezek*, 823 F.2d 1014, 1019 (7th Cir. 1987) (expert witness testified as to the proper level of force to be used in various situations, his

credentials, and that he frequently instructed police officers in the proper use of force; court concluded that this testimony provided a reliable basis for the jury to consider whether the defendants had used excessive force); *Richman*, 415 F. Supp. 2d at 949–50 (expert's opinions of "used only that force that was reasonably necessary" and "acted in a manner reflecting proper training and supervision" were admissible expert testimony, but "were carrying out their lawful duties" was an impermissible legal conclusion). Becker asserts that Dr. Chapman should be permitted to testify as an expert because he is qualified and his testimony will be relevant.

Upon review of the record before the Court, the Court is persuaded that Dr. Chapman is qualified to testify regarding police practices and the use of force, including the use of police canines as an instrument of force, based on Dr. Chapman's education, training, work experience with state and federal agencies, and supervision and deployment of canine handlers and their dogs, as well as his teaching, publishing, and consulting experience. "A witness is only qualified as an expert if the area in which the witness has superior knowledge, skill, experience, or education matches the subject matter of the witness's testimony." *Morris v. Ford Motor Co.*, 2012 U.S. Dist. LEXIS 168423, at *11 (N.D. Ind. Nov. 28, 2012) (citation and quotation marks omitted). While Dr. Chapman is not qualified as an expert to testify regarding training police dogs, he is qualified to testify regarding use of police dogs.

Considering further the reliability and relevancy of Dr. Chapman's anticipated trial testimony, the Court notes that, in the context of the issues in this case,

> A fact finder assessing whether a police officer has used excessive force must analyze the claim under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). This standard requires that a fact finder analyze whether the officer's actions are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident, without regard to the underlying motive or intent of the officer, and without the benefit of hindsight. *Id.* at 396–97. This circuit clarified in *Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988) (*en banc*),

8

> that the "circumstances" to which the *Graham* court referred must mean "only those circumstances known and information available to the officer at the time of his action (firing the fatal shot)." *Id.* at 804. Knowledge and facts gained after the fact, the *Sherrod* court concluded, have no proper place in a court's or jury's analysis of the reasonableness of the actor's judgment. *Id.* at 805. A jury must stand in the shoes of the officer and judge the reasonableness of his actions based on the information he possessed in responding to that situation. *Id.* at 804–05. In short, when evaluating the reasonableness of an officer's actions, the fact finder must do so with blinders on—viewing the circumstances and facts only as they were known to the officer at the time.

*Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011). "There is no doubt that under Rules 702 and 704 an expert may testify about applicable professional standards and the defendants' performance in light of those standards." *Richman*, 415 F. Supp. 2d at 945.

The use of force by police in effectuating an arrest certainly is not a scientific or technical field. Thus, the data, principles, and methods used in this case will not be the same as those used in many typical cases involving expert witnesses, such as medical experts, environmental contamination experts, or engineering experts. However, specialized knowledge regarding the use of force by police may be an area of knowledge that jurors could benefit from the knowledge, skill, experience, training, or education of an expert witness. A typical juror likely will not have experience or knowledge of the various options available to police for using force and how those options should be adapted to the circumstances and changing circumstances confronting police. Similarly, a typical juror likely will not have experience or knowledge of the standards for police practices when executing a warrant and effectuating an arrest. Thus, the specialized knowledge of an experienced, qualified police officer may be helpful to the trier of fact in understanding the evidence and determining facts in issue, and therefore, Dr. Chapman's anticipated testimony is relevant.

The Defendants challenge the reliability of Dr. Chapman's testimony because, they argue, his expert report fails to identify any professional standards underlying his opinions. They assert

9

that Dr. Chapman recognized the certifying organization "United States Police Canine Association, Inc.," but he failed to consider or refer to its standards when formulating his opinions and drafting his report.

Dr. Chapman's report indicated that he reviewed the facts of this case, the City of Evansville's rules and regulations and standard operating procedures, and depositions taken in this matter. He also reviewed two articles: "The Police Canine Bite: Force, Injury, and Liability" by McCauley, Barker, Boatman, Goel, Short, and Zhou, Ph.D., and "Bark and Hold v. Find and Bite" by Jason Coutts, American Society of Canine Trainers. Dr. Chapman explains that he formulated his opinions in the expert report based on his "knowledge and experience" and "education and training" ([Filing No. 85-1 at 2](#)) as well as the case materials, analyzing the facts and issues "against a backdrop of the professional standards, practices, principles, judicial guidance, and protocols recognized, relied upon, and employed in policing and the law enforcement profession on the date of this incident." ([Filing No. 85-1 at 9](#).) Throughout the expert report, Dr. Chapman provides citations to the City of Evansville's standard operating procedures, reviewed articles, and case law that established standards for police use of force. While Dr. Chapman could have provided more detail or explanation in his report regarding his "methodology," given that *Daubert's* guidance on determining reliability is flexible based on the circumstances of the case, see *Kumho Tire*, 526 U.S. at 150–51 and *Gayton*, 593 F.3d at 616, and given that the topic of police use of force is not a scientific or technical area, the Court is satisfied by the explanation and citations in the report that Dr. Chapman's methods are reliable to allow him to testify about the use of force in this case.

As noted above, "[d]eterminations on admissibility should not supplant the adversarial process; 'shaky' expert testimony may be admissible, assailable by its opponents through cross-examination." *Gayton*, 593 F.3d at 616. "Vigorous cross examination, presentation of contrary

evidence and careful jury instructions . . . are the traditional and appropriate means of attacking shaky but admissible evidence." *Richman*, 415 F. Supp. 2d at 933. "The rejection of expert testimony is the exception rather than the rule, and the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Id.*

Becker has not offered Dr. Chapman's report into evidence, and he has not listed it on his trial exhibit list. Therefore, the Court declines to address line-by-line the statements from the report that the Defendants challenge. However, the Court provides the following direction to ensure that Becker and his expert witness do not digress into the impermissible area of providing threadbare legal conclusions.

Becker concedes that Dr. Chapman's opinions regarding "deliberate indifference" "are opinions which draw legal conclusions and are not admissible at trial." (Filing No. 152 at 6.) Thus, Dr. Chapman may not testify that the actions of the City of Evansville and/or Officer Elfreich were done intentionally and with "deliberate indifference." Dr. Chapman also may not testify as to the legal conclusion that Officer Elfreich used "excessive force" and may not testify regarding the legal definition of "excessive force." He may not offer an opinion on whether Officer Elfreich's use of force violated the directives and standards established in *Graham v. Connor* – or any other cases – because it is the Court's responsibility alone to instruct the jury on the law. He may not offer an opinion as to what Officer Elfreich "knew" as he is not allowed to testify as to Officer Elfreich's state of mind. He may not offer an opinion that Officer Elfreich acted under color of law or testify regarding the legal definition of "under color of law." Additionally, Dr. Chapman should not testify as to the credibility of any witnesses. In his response brief, Becker further agreed not to use the term "brutal force." Dr. Chapman may testify only about topics such as the City of Evansville's police policies and practices, general police policies and practices, and


how he believes the conduct of the City of Evansville and Officer Elfreich fell below standards. Accordingly, Defendants' Motion to Strike Dr. Chapman's anticipated testimony is **granted in part and denied in part.**

As a final note, the Court reminds the parties that Counsel may establish qualifications; however, the Court will not declare a witness to be "an expert."[1] That determination is one that is left to the discretion of the jury.

## IV.    CONCLUSION

For the foregoing reasons, the Defendants' *Daubert* Motion (Filing No. 149) to strike Dr. Chapman's expert report and his anticipated trial testimony is **DENIED in part and GRANTED in part**.

SO ORDERED.

Date: 10/28/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Steven L. Whitehead
whiteroc@gibsoncounty.net

Michael C. Keating
KEATING & LAPLANTE
mkeating@keatingandlaplante.com

Jason Michael Spindler
SPINDLER LAW
jason@spindlerlaw.com

Keith W. Vonderahe
ZIEMER STAYMAN WEITZEL & SHOULDERS
kvonderahe@zsws.com

---

[1] Courtroom Procedures and Trial Practice Before the Honorable Tanya Walton Pratt, page 11.

Robert L. Burkart
ZIEMER STAYMAN WEITZEL & SHOULDERS
rburkart@zsws.com

Jean Marie Blanton
ZIEMER STAYMAN WEITZEL & SHOULDERS
jblanton@zsws.com